528 A.2d 663

In Re: Condemnation by the Commonwealth of Pennsylvania, Acting by and Through the Department of General Services of the Property of Benart Associates, a Penna. Limited Partnership; Blue Ridge Real Estate Company (a Penna. Corp.); et al. Ivan M. Popkin and Susan A. Popkin, Appellants.

Argued April 23, 1987, before Judges COLINS and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Jerry M. Gewirtz*, with him, *Allan B. Schneirov, Mesirov, Gelman, Jaffe, Cramer & Jamieson*, for appellants.

*David A. Fitzsimons*, Assistant Counsel, with him, *H. Warren Ragot* and *P. Alan Zulick*, Assistant Counsels, and *Anthony P. Krzywicki*, Chief Counsel, for appellee.

OPINION BY SENIOR JUDGE NARICK, July 2, 1987:

Ivan Popkin and Susan Popkin, his wife (Popkins) appeal from an order of the Court of Common Pleas of Carbon County dismissing their preliminary objections to a declaration of taking filed by the Department of General Services (DGS). For the reasons set forth below, we affirm.

On August 30, 1982 a declaration of taking was filed by the DGS as part of a regional condemnation undertaken by the DGS for the creation of the Lehigh Gorge State Park (Lehigh Gorge). Included in the acquisition is a parcel of land owned by the Popkins, and located in Kidder Township, Pennsylvania. The declaration of taking cited Section 2401.1 of The Administrative Code of 1929 (Code),[1] as the statutory authority for the taking, and also made reference to two resolutions made by the General State Authority which authorized the taking.[2]

Although the relevant facts in this matter are not disputed, the Popkins filed preliminary objections on September 30, 1982 alleging: (1) Section 2401.1 of the Code, 71 P.S. §631.1 did not confer authority upon the DGS to condemn Appellants' property; (2) the Wild and Scenic Rivers Act, 16 U.S.C. §1271 *et seq.* (WSRA), is the controlling law, and the DGS in violation of the WSRA has failed to give the Popkins the right to use or occupy the condemned property during their lifetime; and (3) the DGS has condemned more land than is necessary and has otherwise acted arbitrarily and discriminatorily in determining which properties or what portions thereof are to be condemned for the development of the Lehigh Gorge.

The Popkins first argue that pursuant to Section 2401.1, Clause 2 (Clause 2) and Clause 4 (Clause 4) of the Code, the DGS is not authorized to condemn the

---

[1] Act of April 9, 1929. Section 2401.1 was added by Section 9 of the Act of July 22, 1975, P.L. 75, 71 P.S. §631.1

[2] The declaration of taking also provided in paragraph three that "By resolution of the Board of the General State Authority at meetings held on September 20, 1972 and revised on February 19, 1975, the taking was authorized. . . . By Section 22 of said Act 45 the powers and functions of the General State Authority were transferred to the Department of General Services. By Act 228 approved December 18, 1980 the authorized funding was increased. . . ."

Popkins' property for the purpose of acquiring land for Lehigh Gorge.[3] However, the Popkins' reliance on Clause 2 is misplaced. The Popkins incorrectly assert that Clause 2 and Clause 4 should be read together. However, Section 2401.1 is an enumeration of the specific powers of the DGS. Thus, Clause 2 and Clause 4 are two different and distinct powers of the DGS.

The purpose of the taking is indicated in paragraph four of the declaration of taking:

4. The use of which the properties is taken is the access to, and preservation, dedication and conservation of the upper Lehigh River, its banks, surrounding land and waters which are

---

[3] Clause 2 provides:

In addition to all other powers and duties set forth in this Act, the Department of General Services shall have the power, and its duty shall be: . . .

(2) To have exclusive authority over all construction of capital public improvement projects passed in a Commonwealth Capital Budget or other legislation; excluding, however, highways, bridges and other transportation facilities. 'Public Improvement Projects' means and includes constructing, improving, and acquiring sewers, sewer systems, and sewage treatment works for State institutions of every kind and character, public buildings for the use of the Commonwealth, State arsenals, armories, and military reserves, State airports and landing fields, State institutions of every kind and character, additions and improvements to State colleges and Indiana University of Pennsylvania, State-related educational institutions, necessary roads, bridges, tunnels, and relocation of highways needed for 'public improvement projects,' swimming pools, reservoirs and lakes, marinas, marine terminals, port improvements, low-head dams, improvements to river embankments, desilting dams, impoundment basins, flood control projects, and the purchase of lands for rehabilitation purposes in connection with state institutions and for use of state colleges: . . .

needed for recreation, health and scenery of the citizens of the Commonwealth of Pennsylvania.

In paragraph two of the declaration of taking, the DGS indicated that the authority for the taking was Section 2401.1 of the Code, but no reference was made to any particular clause in Section 2401.1 of the Code. However, The Eminent Domain Code[4] only requires a condemnor, under the power of condemnation given by law, to set forth the "statute, article and section thereof under which the condemnation is authorized". The authority relied upon by the DGS for the taking is Clause 4 which provides:

> To acquire land in the name of the Commonwealth by purchase or eminent domain proceedings, in fee or in such right, title, interest, or easement as the department may deem necessary for *the project as specifically authorized in a capital budget or other legislation, excluding, however, highways, bridges and other transportation facilities*. (Emphasis added.)

The other legislation referred to in Clause 4 includes the Supplemental Capital Budget Act of 1980, Act of December 18, 1980, P.L. 1252 (Act 228). Act 228 is cited by the DGS in paragraph 3 of its declaration of taking.[5] Capital budget authorization for Lehigh Gorge is

---

[4] Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-402(b)(2) (Supp. 1986).

[5] Act 228 provides in pertinent part:

The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

Section 1. Itemization and authorization of public improvement projects.—Additional capital projects in the category of public improvement projects to be acquired or constructed by the Department of General Services, its successors or assigns, and to be financed by the incurring of debt, are hereby itemized, together with the respective

also found in the Act of December 30, 1974, P.L. 1101, and the Act of June 30, 1972, P.L. 721.[6] Accordingly, we conclude that Clause 4 confers specific authority upon the DGS to acquire lands, including the Popkins' property for Lehigh Gorge.

Secondly, the Popkins contend that the DGS has not given the Popkins an option to retain or utilize their property during their lifetime as required by the WSRA. As support for their position, the Popkins argue that the WSRA is applicable to the present case because the DGS has received federal funds for the Lehigh Gorge project. Although the WSRA does provide for a condemnee's right of use or occupancy of condemned property, this provision applies only to situations where condemnation proceedings have been initiated on the federal level by the Secretary of Interior or the Secretary of Agriculture.[7] The instant matter, whereby the DGS has acted to acquire land for Lehigh Gorge, involves state action.

---

estimated financial costs and the total additional amount authorized for the public improvement projects as follows:

. . .

B.  Itemization of Public Improvement Projects:

| PROJECT | BASE PROJECT ALLOCA- TION | DESIGN & CONTINGEN- CIES | TOTAL PROJECT ALLOCA- TION |
|---|---|---|---|
| IV. Department of Environmental Resources | | | |
| . . . . | | | |
| (e) Lehigh Gorge State Park | | | |
| (1) Additional funds for DGS 194-46, Land Acquisition | 2,334,000 | 350,000 | 2,684,000 |

[6] The Acts were not cited by the DGS in the declaration of taking.

[7] Section 6 of the WSRA, 16 U.S.C. §1273(a) and (g).

Moreover, the Lehigh River is not a component of the national system but rather is a component of the Pennsylvania Scenic Rivers System. *See* Lehigh Scenic River Act, Act of April 5, 1982, P.L. 222, *as amended,* 32 P.S. §820.61 and the Pennsylvania Scenic Rivers Act, Act of December 5, 1972, P.L. 1277, *as amended,* 32 P.S. §820.21. Furthermore, the sources of federal funding regarding the Lehigh Gorge project are the WSRA and the Land and Water Conservation Fund Act of 1965, P.L. 88-578, 78 Stat. 897 (codified as amended in scattered sections of 16 U.S.C.). There is no language in either of these statutes requiring states receiving federal funds to comply with Section Six of the WSRA. Therefore, we conclude that the WSRA has no application to the instant matter.

Lastly, the Popkins argue that the DGS has condemned more land than is necessary and has otherwise acted arbitrarily and discriminatorily. As already indicated by the trial court, the Popkins did not raise this issue in their preliminary objections. Rather this argument was first raised by the Popkins in a brief submitted three years after the declaration of taking was filed. The trial court, noting that the Popkins failed to offer any explanation for the delay, held that the objection was untimely.[8] We agree, and therefore this argument cannot be considered by this Court. *Appeal of Edgewood Building Co., Inc.,* 43 Pa. Commonwealth Ct. 91, 402 A.2d 276 (1979); *Smith v. Department of Transportation,* 25 Pa. Commonwealth Ct. 56, 358 A.2d 734 (1976).

---

[8] Section 406 of the Eminent Domain Code, 26 P.S. §1-406 (Supp. 1986) provides in pertinent part:

(a) Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking. The court upon cause shown may extend the time for filing preliminary objections. . . .

Accordingly, the decision and order of the Court of Common Pleas of Carbon County, dismissing the Popkins' preliminary objections, is affirmed.

ORDER

AND NOW, this 2nd day of July, 1987, the order of the Court of Common Pleas of Carbon County in the above-captioned matter is affirmed.

Judge PALLADINO concurs in the result only.